JOHN McRAE v. FRANK DAVENPORT AND CHARLES CHASE.

*Chattel mortgage to be satisfied by labor.*

The buyer of a portable saw-mill gave a series of notes for the unpaid portion of the purchase price and secured them by a chattel mortgage on the mill. He also made a contract with the seller whereby he was to saw for him, and the latter was to be allowed to withhold one-third of the payments due for this work until it should amount

to the unpaid balance.  He did not do so however, and when so: much sawing had been done that a third of the payments therefor would have completed the payment for the mill, the first note only had been actually paid.  As the remaining notes were not taken up, the· seller demanded the property, and as the buyer refused to give it up he took it on a writ of replevin.  *Held*, that as the seller had not withheld the money to which he was entitled, and it was therefore· never allowed to apply on the mortgage, it did not follow that the· mortgage was extinguished from the fact, merely, that enough sawing had been done to satisfy it.

Error to Montcalm.  (V. H. Smith, J.)  Oct. 16.—Oct. 31.

REPLEVIN.  Plaintiff brings error.  Reversed.

*John Atkinson, W. S. Whittlesey* and *Isaac Marston* for appellant.

*Brown & Griswold* for appellees.

GRAVES, C. J.  August 25, 1880, the plaintiff sold to the· defendants a portable saw-mill for $2200.  They paid him $1000, and for the residue gave him their eight promissory notes of $150 each, payable in one, two, three, four, five, six,. seven and eight months, and a chattel mortgage on the mill to secure them.  On the same day the parties made a written contract by which the defendants agreed to manufacture· lumber and shingles for·the plaintiff at said mill after certain named rates.  By this contract the plaintiff was to keep· back one-third of the sum to be allowed for sawing until the amount so retained should be $1200, and this money it was provided should be applied on the purchase price of the mill.  The other two-thirds he was to pay to defendants as· earned in monthly payments.

The course of affairs, as we gather from the record, was· as follows : The defendants proceeded to manufacture under· the contract, but finding themselves unable to continue and at the same time make the payments on the mortgage by allowing the plaintiff to withhold one-third of the earnings, they elected to call out of the fund in his hands not only

the two-thirds which it was their province to draw, but also a large part of the one-third which it was agreed should remain. The money actually earned was more than three times the amount intended for the plaintiff, so that if the one-third which was designed to be left on the mortgage had not been diverted, the mortgage would have been satisfied. But on account of the reduction of the fund which the defendants thus made, only enough was suffered to remain to discharge the first note. The others not being taken up, the plaintiff called for the mortgaged property, and the defendants refused to surrender it. The plaintiff then seized it by replevin. The defendants contended that, having manufactured three times the amount going to the plaintiff, it was a necessary consequence that the mortgage was paid and extinguished.

The circuit judge directed a verdict for the defendants, and they recovered the value of the property. We think this was error.

By the result reached the defendants get the value of the mill, and still retain the benefit of a large share of the purchase price. The bias of the evidence goes to show that the plaintiff never consented to a constructive satisfaction of his mortgage. He forebore to enforce the application authorized by the contract, and permitted the defendants to intercept it and to turn the money away from the mortgage, and put it to a foreign use of their own. By consent that part of the fund in question was actually diverted from the end originally agreed on, and was reserved and put by defendants to another purpose. It was never allowed to attach to the mortgage. Such seems to be the import of the facts.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.